Filed 4/19/22  P. v. Williams CA2/1
(opinion on transfer from Supreme Court)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br>   Plaintiff and Respondent, <br><br> v. <br><br> ANZYLON WILLIAMS, <br><br>   Defendant and Appellant. | B300341 <br><br> (Los Angeles County Super. Ct. No. BA212549) |

  APPEAL from an order of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Reversed and remanded with directions.

  James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

  Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee, Colleen M. Tiedemann and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

In 2001, defendant and appellant Anzylon Williams was charged with attempted murder and conspiracy to commit murder. During her trial, the court instructed the jury that it could find the attempted murder was willful, deliberate, and premeditated if it found the attempted murder was a natural and probable consequence of the commission of the target crime of assault with a firearm. (See *People v. Wilson et al.* (Mar. 13, 2003, B156275) [nonpub. opn.] [2003 WL 1091052 at p. *2].)[1] The jury convicted defendant of attempted willful, deliberate, and premeditated murder and conspiracy to commit murder. The court sentenced Williams to 26 years to life in prison.

In 2019, defendant filed a petition under Penal Code[2] section 1170.95 in the trial court claiming the trial court's instruction on natural and probable consequences rendered her conviction for attempted murder invalid under current law. The trial court denied Williams' petition, finding Williams did not establish a prima facie showing for section 1170.95 relief. We affirmed in an unpublished opinion, concluding section 1170.95 did not apply to convictions for attempted murder. (*People v. Williams* (June 29, 2020, B300341) [nonpub. opn.] (*Williams I*).)

The Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and

---

[1] On our own motion, we take judicial notice of this court's 2003 unpublished opinion following Williams' trial. (Evid. Code, § 452, subd. (d).) Wilson was Williams' codefendant.

[2] Unspecified statutory citations are to the Penal Code.

reconsider the case in light of Senate Bill No. 775 (Stats. 2021, ch. 551) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). Senate Bill No. 775 amended section 1170.95 to, inter alia, extend its benefits to those convicted of attempted murder under the natural and probable consequences theory.

In light of the changes to section 1170.95, we conclude defendant is entitled to a new determination by the trial court as to whether her petition establishes prima facie eligibility for relief. Although the Attorney General argues defendant's conviction for conspiracy to commit murder necessarily establishes the jury found she acted with an intent to kill, we are unwilling to reach that conclusion given the extremely limited record before us.

Accordingly, we reverse and remand for further proceedings under section 1170.95.

## FACTUAL BACKGROUND

We quote a portion of our summary of facts from our 2003 opinion. "The victim (Clark) had a live-in relationship with defendant Williams. In October of 2000, Williams told Clark that if she could not have him no one could and that (presumably if the relationship soured) she would kill him or have him killed. The following month, Clark ended the relationship and Williams moved out. Early in the morning on December 2, 2000, as Clark parked his car in a friend's driveway and got out, a car owned by Williams' brother (defendant Wilson) pulled up behind. Three people were in the car. Williams sat up from the back seat, pointed at Clark, and ducked back down. Wilson, the front passenger, got out of the car, hurled a profanity at Clark, and pulled out a hand gun. Clark ran. Wilson chased Clark and fired

3

several shots, hitting Clark in the arm and left buttock.  The culprits drove away."  (*Wilson*, *supra*, B156275 [2003 WL 1091052 at p. *1].)  Clark survived the shooting.

## PROCEDURAL BACKGROUND

### A.    Trial, judgment, and direct appeal

An amended information charged Williams with attempted willful, deliberate, premeditated murder with malice aforethought in violation of sections 187, subdivision (a), and 664; conspiracy to commit murder in violation of sections 182, subdivision (a)(1), and 187; and a firearm enhancement pursuant to section 12022, subdivision (a)(1).

During the trial, the court instructed the jury:  " 'If you should find the defendant Anzylon Williams guilty of count 1 based on this theory [aiding and abetting], then in order to find to be true the allegation pursuant to . . . section 664[, subdivision] (a) that the attempted murder was willful, deliberate, and premeditated, you must be satisfied beyond a reasonable doubt and unanimously agree that this allegation was a natural and probable consequence of the commission of the target crime of assault with a firearm."  (*Wilson*, *supra*, B156275 [2003 WL 1091052 at p. *2], capitalization omitted.)

The jury convicted Williams of attempted murder and conspiracy to commit murder, found that the attempted murder was willful, deliberate, and premeditated, and found that in the commission of the attempted murder, a principal was armed with a firearm.  The court sentenced Williams to an indeterminate term of 26 years to life in prison.

During her 2003 appeal, Williams argued the trial court should have "instructed that in order to find Williams guilty of

premeditated attempted murder it must find that she indeed premeditated and deliberated," but "concede[d] that this argument was rejected in *People v. Laster* (1997) 52 Cal.App.4th 1450 . . . ." (*Wilson, supra*, B156275 [2003 WL 1091052 at p. *2].) This court affirmed the judgment.

## B.     Section 1170.95 petitions

On February 4, 2019, Williams filed a section 1170.95 petition for resentencing using a check-the-box form prepared by Re:Store Justice, a cosponsor of Senate Bill No. 1437. (See Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Apr. 24, 2018, p. 1.) The People filed an opposition in which they argued Williams was not eligible for resentencing because she was not convicted of first or second degree murder. Attached to the opposition were the minutes of the jury verdict and the abstract of judgment.

The trial court denied Williams' petition without prejudice. The minute order stated that the petition was "a boiler plate document with check [in] the box questions[,] some of which are completed incorrectly." The court found the petition failed to state a prima facie case for relief. The court appointed counsel for Williams, instructing counsel to determine whether the matter merited further consideration.

On April 29, 2019, Williams filed another section 1170.95 petition, again using a check-the-box form. Williams did not check the initial box indicating she was convicted of first or second degree murder, although she checked both boxes later in the form indicating that she was convicted of first degree murder under the felony-murder rule and that she was convicted of second degree murder under the natural and probable consequences doctrine.

5

On July 1, 2019, the trial court held a hearing on the petition at which Williams' counsel, but not Williams herself, appeared.  The trial court heard no argument, instead stating, "The court has received a boilerplate check-the-box form that the court has received over and over again from individuals in state prison seeking relief.  [¶]  The court does not find that simply checking the box without making any factual representations as to the circumstances in this case satisfies the requisite standard of showing a prima [facie] case of entitlement to relief."  The trial court again denied the petition without prejudice, stating it would "give a copy of the defendant's moving papers" to defendant's counsel.  The court concluded, "Upon further evaluation of the merits of M[s]. Williams' request, the court will certainly be open to recalendaring this at counsel's request."

Williams appealed from the denial of her petition.  We affirmed in *Williams I,* holding that section 1170.95 applied only to defendants convicted of first or second degree murder.  Williams, having been convicted of attempted murder, was ineligible for resentencing.  We therefore concluded the trial court properly denied the petition without accepting further briefing or issuing an order to show cause.

The Supreme Court granted review, and transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551) and the Supreme Court's decision in *Lewis.*  The parties filed supplemental briefs in this court following the Supreme Court's remand.

6

## DISCUSSION

### I.　Senate Bill No. 1437

"[U]ntil recently, when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 845 (*Gentile*).)

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) amended section 188 to provide that '[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (Stats. 2018, ch. 1015, § 2.)  The amendment effectively 'eliminates natural and probable consequences liability for first and second degree murder.' [Citation.]" (*People v. Garrison* (2021) 73 Cal.App.5th 735, 742 (*Garrison*).)  In addition, Senate Bill No. 1437 amended section 189 to limit culpability for felony murder except in specified circumstances. (*Garrison*, at p. 742.)

Senate Bill No. 1437 also enacted section 1170.95, which provides a procedure by which a person convicted of murder under a theory invalidated under Senate Bill No. 1437 may petition to vacate the conviction and be resentenced. (*Gentile*, *supra*, 10 Cal.5th at p. 843; § 1170.95, subd. (a)(3).)  Under the original version of 1170.95, a facially sufficient petition had to aver the following:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The

7

petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, former subd. (a) (Stats. 2018, ch. 1015, § 4).)

If the petition makes a prima facie showing the petitioner is eligible for relief, the trial court must issue an order to show cause and hold an evidentiary hearing whether to vacate the conviction.  (*Garrison*, *supra*, 73 Cal.App.5th at p. 743; § 1170.95, subds. (c), (d).)

## II.    *People v. Lewis*

In *Lewis*, the Supreme Court clarified the proper procedure for the trial court's prima facie assessment of a petition under section 1170.95.  The court explained that "upon the filing of a facially sufficient petition," the trial court must appoint counsel and allow an opportunity for briefing.  (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  Only after having done so may the trial court determine whether a petitioner has made the necessary prima facie showing.  (*Ibid*.)  Failure to appoint counsel prior to making the prima facie determination, however, "was state law error only," and therefore subject to harmless error review under *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis*, at pp. 957–958.)

The Supreme Court further held that the trial court may rely on the record of conviction in making the prima facie determination.  (*Lewis*, *supra*, 11 Cal.5th at pp. 970–971.)  The court cautioned, however, that "the prima facie inquiry . . . is limited."  (*Lewis*, at p. 971.)  The trial court must " ' "take[ ] [the] petitioner's factual allegations as true and make[ ] a preliminary

8

assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . .” ’ [Citation.]” (*Ibid.*)  “ ‘[A] court should not reject the petitioner’s factual allegations on credibility grounds without first conducting an evidentiary hearing.’ [Citation.]” (*Ibid.*)  Nevertheless, “ ‘if the record, including the court’s own documents, “contain[s] facts refuting the allegations made in the petition,” then “the court is justified in making a credibility determination adverse to the petitioner.” ’ [Citation.]” (*Ibid.*)

## III.  Senate Bill No. 775

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) amended section 1170.95 to, inter alia, extend relief to those convicted of attempted murder under the natural and probable consequences doctrine.  (See § 1170.95, subd. (a); Stats. 2021, ch. 551, § 2.)

Senate Bill No. 775 also codified the holdings of *Lewis* in regard to the right to counsel and “the standard for determining the existence of a prima facie case.” (Stats. 2021, ch. 551, § 1, subd. (b).)  Accordingly, the current version of section 1170.95 provides that the trial court must appoint counsel for defendant upon receipt of a petition containing the required information. (§ 1170.95, subd. (b)(3).)  The prosecutor must file and serve a response, and the petitioner may then file and serve a reply.  (*Id.*, subd. (c).)  After the parties have had the opportunity for briefing, “the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.” (*Ibid.*)  If the petitioner makes the prima facie showing, the trial court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the conviction.  (*Id.*, subds. (c), (d).)

## IV. Under Senate Bill No. 775, Defendant Is Entitled to a New Determination Whether Her Petition Makes a Prima Facie Case for Relief

The sole basis of our holding in *Williams I* was that section 1170.95 did not provide relief to those convicted of attempted murder, as defendant was.  At least two courts have concluded Senate Bill No. 775's expansion of section 1170.95 to include attempted murder applies retroactively to judgments not yet final as of the effective date of the amendments.  (*People v. Porter* (2022) 73 Cal.App.5th 644, 651–652; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006–1007.)  This conclusion makes particular sense in the context of section 1170.95 petitions, which could simply be refiled under the new law were we to deny them on the basis of the old law.  For the sake of judicial economy, if nothing else, we will apply the amended, current version of section 1170.95 to this appeal, in which judgment is not yet final.

The current version of section 1170.95, of course, abrogates our original holding that defendant was ineligible for relief based on her conviction for attempted murder.  The Attorney General argues we nonetheless should affirm the denial of defendant's petition because her conviction for conspiracy to commit murder indicates the jury necessarily found she had the intent to kill.  In support, the Attorney General cites *People v. Medrano* (2021) 68 Cal.App.5th 177 (*Medrano*).

Medrano was convicted of two counts of first degree murder, two counts of attempted first degree murder, and one count of conspiracy to commit first degree murder.  (*Medrano, supra*, 68 Cal.App.5th at pp. 177, 179.)  Later, Medrano filed a section 1170.95 petition.  (*Id.* at p. 180.)  The trial court issued an

order to show cause and conducted an evidentiary hearing, after which it denied the petition.  (*Id.* at p. 181.)

The Court of Appeal affirmed the denial of the petition. (*Medrano, supra,* 68 Cal.App.5th at p. 186.)  The court held that, although the jury had been instructed on the natural and probable consequences doctrine, the conviction for conspiracy to commit murder " 'requires a finding of intent to kill.'  [Citation.] ' "[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder." ' [Citation.]"  (*Id.* at pp. 182–183.)  Thus, the court concluded, the jury did not rely on the natural and probable consequences theory to convict Medrano.[3]

In support of its holding, the court cited, inter alia, the prosecutor's argument at trial that Medrano " 'clearly did harbor the intent to kill,' " and the jury instruction that Medrano "could convict [Medrano] of conspiracy to commit first degree murder only if it found he had acted 'with the specific intent to agree to commit the public offense of first degree murder and with the further specific intent to commit such offense.' "  (*Medrano, supra,* 68 Cal.App.5th at pp. 183–184.)

---

[3] One panel member dissented from the holding in *Medrano*, concluding on the facts of that case, "it is at least possible the jury found only that appellant participated in a driveby shooting, without an intent to kill."  (*Medrano, supra,* 68 Cal.App.5th at pp. 187–188 (dis. opn. of Tangeman, J.).)  The dissent noted, inter alia, that the jury instructions confused the jury as evidenced by the jury's question about "whether they could convict [the defendant] of first degree murder even if he did not share the shooter's intent to kill" to which the trial court responded in the affirmative.  (*Id.* at p. 187.)

11

*Medrano* also relied on the Supreme Court's decision in *People v. Beck and Cruz* (2019) 8 Cal.5th 548 (*Beck & Cruz*). (*Medrano, supra*, 68 Cal.App.5th at p. 183.)[4]  *Beck & Cruz* held that the defendants' convictions for conspiracy to commit murder indicated the jury did not erroneously convict them for murder under a natural and probable consequences theory.  (*Beck & Cruz*, at p. 645.)  The Supreme Court noted that the defendants "were charged with conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder."  (*Ibid*.)  The court further noted the prosecution never argued the defendants were culpable for having intended to commit a lesser crime that resulted in murder.  (*Ibid*.)

We cannot draw the same conclusions reached in *Medrano* and *Beck & Cruz* on the limited record before us.  In those prior cases, the reviewing courts had before them a far more robust record, including jury instructions and the prosecutor's closing argument, than we have here.  The courts referred to that record in support of their holdings, and did not simply rely on the fact of conviction for conspiracy to convict murder to conclude the defendants had not been convicted under the natural and probable consequences doctrine.  Indeed, the trial court in *Medrano* conducted a full evidentiary hearing before denying Medrano's section 1170.95 petition.

---

[4]  *Beck & Cruz* was not a section 1170.95 case.  There, the issue was whether defendants wrongly had been "convicted of first degree premeditated murder as an aider and abettor under the natural and probable consequences doctrine" in violation of *People v. Chiu* (2014) 59 Cal.4th 155.  (*Beck & Cruz, supra,* 8 Cal.5th at p. 644.)

In contrast, we have very little of the trial record before us. We have minute orders and an abstract of judgment indicating the jury convicted defendant of attempted murder and conspiracy to commit murder, and from our opinion in defendant's direct appeal we have an instruction given on the natural and probable consequences doctrine. We do not know what other instructions were given, or what arguments were made at trial, and therefore cannot determine whether there might have been something in those instructions or arguments, or anything else in the record, that distinguishes this case from *Medrano* or *Beck & Cruz*. Nor has defendant's counsel or the prosecutor had the opportunity to research the record of conviction or address these issues in light of the amendments to section 1170.95.

We thus are unwilling to conclude at this juncture that defendant's conviction for conspiracy to commit murder renders her ineligible for relief under section 1170.95. We remand with directions that the trial court allow defendant to amend her petition to include her conviction for attempted murder. The trial court shall then proceed as set forth in section 1170.95, including appointing counsel for defendant, receiving briefing, and making a new determination whether defendant has made a prima facie showing for relief.

Consistent with *Lewis*, in making that prima facie determination the trial court should accept defendant's factual allegations as true unless the record of conviction " ' "refut[es] the allegations made in the petition." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The trial court should not, as it did in assessing defendant's original petition, deny it on the basis that the petition itself lacks factual representations beyond the averments required under section 1170.95, subdivisions (a) and (b).

13

Defendant appears to argue we should direct the trial court immediately to issue an order to show cause, and conduct an evidentiary hearing, thus bypassing the initial prima facie determination.  Just as we are unwilling to conclude on the limited record before us that defendant is ineligible for relief, we also are unwilling to conclude she has made the necessary prima facie showing.  It may be the record of conviction refutes her assertion that she was convicted under the natural and probable consequences doctrine.  The trial court must have the opportunity to make that determination with the aid of further briefing by the parties, in accord with section 1170.95, subdivision (c).

## DISPOSITION

The July 1, 2019 order denying Anzylon Williams' petition is reversed.  We remand for further proceedings under Penal Code section 1170.95 consistent with this opinion.
NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.                    CRANDALL, J.*

_____

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14